IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNION INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>vs.<br><br>HULL & COMPANY, INC., and BROWN & BROWN, INC.,<br><br>    Defendants. | No. 4:10-cv-00337 – JEG<br><br>**O R D E R** |

This matter is before the Court on Motion to Dismiss by Defendant Brown & Brown, Inc. (Brown), pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff Union Insurance Company (Union) resists. Also pending before the Court is Union's Motion to Compel Arbitration. Defendants Hull & Company, Inc. (Hull), and Brown (collectively, Defendants) resist. On November 9, 2011, the Court held a hearing on the motions. Attorneys Jeffrey Lanz and Stephanie Tipton represented Union, and attorney John Clendenin represented Brown and Hull. The matters are fully submitted and ready for disposition.

**I.    BACKGROUND**

Hull is a wholly-owned subsidiary of Brown. On April 1, 2000, Hull entered into an Agency-Company Agreement (the Agreement) with five insurance companies (the companies), including Union, which is an Iowa insurance company, wherein the companies agreed to give Hull the authority to make binding proposals for insurance contracts for the companies under certain conditions. In the Agreement, Hull is referred to as "Agency," and Union, along with the other companies, as "Company." The relevant language of the Agreement provides,

> Subject to requirements imposed by law, the terms of this Agreement, the underwriting rules and regulations as contained within the Agent's Manual, and where applicable Addendum I, Agency is authorized to receive, accept and strictly in accordance with Company binding guidelines, bind proposals for contracts of insurance for risks located in the Agency state of domicile and any other states where Agency holds a proper non-resident license and for which a commission is specified in the current Commission

Schedule. . . . It is further understood and agreed that Agency shall under no circumstances have authority to bind any risk for: (1) Any coverage when such authority has been restricted by submission or prohibited list published in the Agents Manual or any other written notice given to Agency.

Agreement, Pl.'s Br. Supp. Mot. Compel Arbitration Ex. D ¶ 1 (A), ECF No. 35-4.

Union issued a commercial umbrella insurance policy (the Umbrella Policy) to the Thirsty Parrot Bar and Grill (Thirsty Parrot), a Colorado restaurant and bar. Hull had placed the Umbrella Policy over a commercial general liability primary policy issued by Mt. Hawley (the Mt. Hawley Policy), which provided limits of $1,000,000 per occurrence and $2,000,000 in the aggregate. The declaration page of the Umbrella Policy stated limits of $1,000,000 per occurrence and $1,000,000 in the aggregate over the Mt. Hawley Policy. The Mt. Hawley Policy, however, had an assault and battery endorsement with a $500,000 "wasting" sub-limit.[1]

An employee of the Thirsty Parrot seriously injured a patron, and the patron brought claims against the Thirsty Parrot and the employee for assault, battery, and negligent hiring. Union defended Thirsty Parrot, and the case eventually settled for $1,000,000; Union paid $800,000 toward the settlement. Union also incurred loss adjustment expenses of $19,492.91. The Mt. Hawley policy paid based on the assault and battery endorsement. However, with $300,000 incurred in defense fees, only $200,000 from that policy was paid toward the settlement amount.

Union then sought coverage for the balance of the settlement amount ($819,492.91) from its reinsurer pursuant to a facultative reinsurance agreement; the reinsurer refused, claiming that Union breached a warranty agreement, which provided that there would be $1,000,000 in underlying general liability coverage. Union and the reinsurer arbitrated that dispute. Union

---

[1] A "wasting" sub-limit provision means "the value of the policy diminishes as funds," including defense costs, "are paid out." Liles v. Del Campo, 350 F.3d 742, 745 (8th Cir. 2003); see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. W. Lake Acad., 548 F.3d 8, 12 (1st Cir. 2008) ("Under a wasting policy, the coverage provided is reduced by the amount paid by the insurance company to defend against claims brought by third parties against the insured.").

requested that Defendants join in that arbitration, but Defendants declined to do so. As a result of arbitration, Union only received a partial award of $273,978.78 from the reinsurer. Union then filed this lawsuit against Hull and Brown to recover the balance Union paid.

Union's Second Amended Complaint seeks an order from this Court compelling Defendants to arbitrate this matter under 9 U.S.C. § 4, or, in the alternative, Union seeks damages for breach of contract or indemnification as outlined in the Agreement. On May 17, 2011, Union filed a Motion to Compel Arbitration, and Brown filed its Motion to Dismiss under Rule 12(b)(6), arguing that Union had not adequately pled a claim against it. Both motions were timely resisted.

## II.  DISCUSSION

### A.  Brown's Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see also Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (noting that a complaint "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level" (quoting Twombly, 550 U.S. at 555)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949; see also Twombly, 550 U.S. at 555 (explaining that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" (alterations in original)).

Brown argues in its Motion to Dismiss that Union's Second Amended Complaint cannot withstand a 12(b)(6) motion. Union counters that there are sufficient facts pled based on the alter ego doctrine, piercing the corporate veil, and the "identity rule."[2] It is undisputed that Hull is a wholly-owned subsidiary of Brown. Union alleges that an in-house attorney for Brown, Mr. King, made statements that implied that Hull employees were also Brown employees. Union argues – based solely on these facts – that it has pled facts sufficient to withstand a 12(b)(6) motion. Additionally, Union blames Hull for not "dispel[ling] its belief [that Hull and Brown are the same entity] so as to avoid needlessly naming Brown [] as a party. Brown [] steadfastly refused to work with Union on this issue. As such, Union felt compelled to add Brown [] as a party." Pl.'s Resp. Def.'s Mot. Dismiss 3, ECF No. 43.

Under Iowa law,[3] courts may disregard the corporate form under the alter ego doctrine "if the entity is 'merely an instrumentality or device set up to ensure the avoidance of the legal obligations.'" HOK Sport, Inc. v. FC Des Moines, L.C., 495 F.3d 927, 935 (8th Cir. 2007) (quoting Benson v. Richardson, 537 N.W.2d 748, 761 (Iowa 1995)).

> A corporate entity is the alter ego of a person if (1) the person influences and governs the entity; (2) a unity of interest and ownership exists such that the corporate entity and the person cannot be separated; and (3) giving legal effect to the fictional separation between the corporate entity and the person would sanction a fraud or promote injustice.

Id. (quotation marks and citation omitted). "In addition to applying to persons using a corporate entity as a mere instrumentality, . . . [c]ourts have disregarded the separate corporate personalities of parent and subsidiary corporations in certain circumstances to prevent the parent corporation

---

[2] The cases Union cites when discussing the "identity rule" are both from the 1960s and from states other than Iowa. At the hearing, Union's counsel conceded that there is no such applicable theory under Iowa law.

[3] The Agreement has a choice of law provision designating Iowa as the law to be applied. The parties do not contest the application of the choice of law provision.

from perpetuating a fraud, evading just responsibility, or defeating public convenience." Id. at 935 n.4 (quoting Schnoor v. Deitchler, 482 N.W.2d 913, 915-16 (Iowa 1992)).

The corporate veil doctrine applies only "under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate business purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." Briggs Transp. Co. v. Starr Sales Co., 262 N.W.2d 805, 810 (Iowa 1978).

> The burden is on the party seeking to pierce the corporate veil to show the exceptional circumstances required. Factors that would support such a finding include (1) the corporation is undercapitalized; (2) it lacks separate books; (3) its finances are not kept separate from individual finances, or individual obligations are paid by the corporation; (4) the corporation is used to promote fraud or illegality; (5) corporate formalities are not followed; and (6) the corporation is a mere sham.

Cemen Tech, Inc. v. Three D Indus., L.L.C., 753 N.W.2d 1, 6 (Iowa 2008) (quoting In re Marriage of Ballstaedt, 606 N.W.2d 345, 349 (Iowa 2000)). "[M]ere identity of . . . ownership and corporate management is not alone sufficient to permit a piercing of the corporate veil." HOK Sport, 495 F.3d at 936 (alterations in original) (internal quotation marks and citation omitted).

Union's Second Amended Complaint falls far short of adequately pleading a claim based on either an alter ego theory or piercing the corporate veil. Union names Brown as a party as a precaution yet fails to supply factual information to raise claims against Brown above the "speculative level." See Schaaf, 517 F.3d at 549. A review of the law readily demonstrates that the theories under which Union is attempting to hold Brown liable require more than an allegation that the two companies have the same attorney and are parent and subsidiary. See Briggs, 262 N.W.2d at 810. Yet it is only in that context Brown is mentioned in the Second Amended Complaint. Union, therefore, makes only "threadbare recitals" that preclude the Court from concluding that Union's claims against Brown are plausible. See Iqbal, 129 S. Ct. at 1949. Union merely alleges that Hull and Brown had the same attorney, then refers to that attorney as

5

representing or acting on behalf of both companies and, in conclusion, asks for relief from Brown and Hull. Union has not alleged in a fashion sufficient to withstand a motion to dismiss any of the elements under the alter ego doctrine or any of the factors for piercing the corporate veil. This does not constitute "sufficient factual matter" required to withstand a motion to dismiss. See id. Without any discernible allegations of any wrongdoing by Brown or any underlying facts that would provide a basis for finding that Brown should be held liable under the alter ego doctrine or by piercing the corporate veil, the Motion to Dismiss must be granted.

    **B.  Motion to Compel Arbitration**

The Federal Arbitration Act (FAA)[4] directs that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. There is a "liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). "The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." Bank of Am., N.A. v. UMB Fin. Servs., Inc., 618 F.3d 906, 911 (8th Cir. 2010) (quoting Moses H. Cone, 460 U.S. at 24-25 (1983)). "[H]owever, the presumption of arbitrability is not without limits." Nordin v. Nutri/System, Inc., 897 F.2d 339, 344 (8th Cir. 1990). "[T]he Supreme Court [has] noted that

---

[4] The FAA only applies to written maritime transactions and "contract[s] evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court has interpreted "involving commerce" broadly as "the functional equivalent of 'affecting [commerce].'" Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 274 (1995). Congress intended to invoke through the FAA the broadest permissible exercise of its Commerce Clause power. See Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003). There is no dispute that the Agreement evidences a transaction involving interstate commerce. Furthermore, the FAA applies despite the choice of law clause providing that Iowa law governs. See UHC Mgmt. Co. v. Computer Scis. Corp., 148 F.3d 992, 997 (8th Cir. 1998) (holding that the parties' intent not to apply the FAA must be "abundantly clear" and that a general choice of law provision providing that state law would apply was not sufficient to preclude application of the FAA).

6

'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed to submit.'" Id. (quoting AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986)).

"[W]hether the parties have a valid arbitration agreement that binds them is a question for judicial determination. Likewise, any question as to whether a valid arbitration agreement applies to the subject matter at hand is a question for a court to answer." Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Ironworkers, Shopman's Local 493 v. EFCO Corp. & Constr. Prods., Inc., 359 F.3d 954, 956 (8th Cir. 2004) (internal citation omitted). When a party moves to compel arbitration, the Court must determine "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of the agreement." E.E.O.C. v. Woodmen of the World Life Ins. Soc'y, 479 F.3d 561, 565 (8th Cir. 2007) (quoting Faber v. Menard, Inc., 367 F.3d 1048, 1052 (8th Cir. 2004)).

The Agreement's arbitration provision, in pertinent part, provides, "In case of misunderstanding as to the interpretation or application of any provision of this Agreement which Company and Agency are unable to resolve, the disagreement shall be submitted to binding arbitration at the request of either party . . . ." Agreement, Pl.'s Br. Ex. D ¶ 9, ECF No. 35-4.

### 1. Validity of Arbitration Agreement

To determine arbitrability, the Court must first determine if there was a valid arbitration agreement between the parties. Koch v. Compucredit Corp., 543 F.3d 460, 463 (8th Cir. 2008) (citing United Steelworkers, Local No. 164 v. Titan Tire Corp., 204 F.3d 858, 860 (8th Cir. 2000)). "State contract law governs whether an arbitration agreement is valid." Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 946 (8th Cir. 2001).

Neither party is arguing that the arbitration agreement was invalid. In their response, Brown and Hull argue that Brown was not a party to the arbitration agreement, and therefore

there was no valid agreement between Brown and Union. Because the Court granted Brown's Motion to Dismiss, the Court need not consider the Motion to Compel as to Brown. However, neither party disputes that a valid arbitration agreement existed between Union and Hull. It is therefore appropriate to consider whether the dispute at hand falls within the arbitration provision of the Agreement.

### 2. Whether the Dispute is Within the Scope of the Arbitration Agreement

Once a finding of a valid arbitration agreement has been made, the next step is to determine whether the dispute is within the scope of the arbitration agreement. Teamsters Local Union No. 688 v. Indus. Wire Prods., Inc., 186 F.3d 878, 881 (8th Cir. 1999). Upon finding an arbitration agreement exists, "'[a]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" AT & T Techs., 475 U.S. at 650 (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960) (first alteration in original)); see also United Steelworkers, AFL-CIO-CLC v. Duluth Clinic, Ltd., 413 F.3d 786, 788 (8th Cir. 2005) (same).

In its Second Amended Complaint, Union alleges that Hull placed the Umbrella Policy "[c]ontrary to the Agency Guidelines and Agency-Company Agreement . . . causing Union not to be in compliance with its [Facultative] Reinsurance Agreement." Second Am. Compl. ¶ 44, ECF No. 30. Union argues that Hull breached the provision in the Agreement providing that Hull would bind all insurance pursuant to Union's binding guidelines by not complying with both the Facultative Reinsurance Agreement and certain underwriting guidelines. At the hearing, Union clarified its position that it is primarily relying on the language from the Agreement providing that Hull must act "[s]ubject to . . . the underwriting rules and regulations as contained within the Agent's Manual." Union argues that language incorporates the document entitled "Underwriting

Guidelines for: Hull and Company, Lincoln, NE," (the Underwriting Guidelines) which provides that requirements for general and garage liability in primary policies are $1,000,000 per occurrence, and $1,000,000 for general and products aggregate. Underwriting Guidelines, Pl.'s Br. Ex. E at 1-2, ECF No. 35-5. Union further argues that Hull's placement of the Umbrella Policy over the Mt. Hawley policy, which contained an assault and battery endorsement on the policy with a $500,000 wasting sub-limit, violated these Underwriting Guidelines. Union also asserts that failing to indemnify Union as a result of Hull's breach of the Agreement entitles Union to a ruling requiring Hull to arbitrate this dispute.

Hull counters that the arbitration provision is narrow, that the dispute present in the case concerns collateral agreements outside of, and not incorporated by, the Agreement, and therefore this case is not appropriate for arbitration.

### a. Negligent Misrepresentation

In its Motion to Compel Arbitration, Union asks this Court to order Hull to arbitrate its claim for negligent misrepresentation even though no such claim for negligent misrepresentation appeared in its Second Amended Complaint. At the hearing, counsel for Union conceded that including this request in its motion was error. Therefore, the Court will not compel Hull to arbitrate a claim based on negligent misrepresentation.

### b. Breach of Contract

For breach of contract, Hull argues that the arbitration clause is narrow in scope, that none of the terms that Hull is alleged to have violated fell within the arbitration clause because they were in documents that had not been incorporated by reference into the Agreement, and that they are therefore collateral agreements that are not arbitrable.

The Court determines the breadth of the Agreement's arbitration clause by distinguishing between "broad" and "narrow" clauses. Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co.,

118 F.3d 619, 621 (8th Cir.1997) (citing Prudential Lines, Inc. v. Exxon Corp., 704 F.2d 59, 63 (2d Cir. 1983)). If the Court determines the clause is broad, then arbitration will be compelled if the dispute relates to the subject matter of the agreement; if narrow, then the court considers "'whether the dispute involves an agreement collateral to the agreement containing the arbitration clause.'" Duluth Clinic, 413 F.3d at 789 (quoting Fleet Tire, 118 F.3d at 621).

In Fleet Tire, the Eighth Circuit found the clause at issue in that case, which provided that "[a]ny controversy or claim arising out of or relating to [the] Agreement," was broad. Fleet Tire, 118 F.3d at 620-21. Similarly applying this principle to an arbitration clause that covered "*any dispute* between the Employer and the Union . . . concerning the effect, interpretation, application, claim of breach or violation of this Agreement, or *any other dispute* which may arise during the term of this Agreement," this Court found it to be broad. Local 447 of the Int'l Union of Painters & Allied Trades v. Five Seasons Paint & Drywall, Inc., 426 F. Supp. 2d 982, 993-94 (S.D. Iowa 2006). In finding those clauses were broad, these courts focused on language such as "or relating to," "any dispute," and "any other dispute." On the other hand, where the arbitration clause provided that "any claim . . . alleging a violation of a specific contract provision or adherence to the terms and provisions of [the] Agreement," the Eighth Circuit found it was narrow. Duluth Clinic, 413 F.3d at 789.

The clause at issue here narrowly pertains to a "misunderstanding as to the interpretation or application of any provision of this Agreement." Agreement, Pl.'s Br. Ex. D ¶ 9, ECF No. 35-4. This is in stark contrast to the clauses in Fleet Tire and Five Seasons, which encompassed disputes relating to the agreement and any disputes that would arise during the term of the agreement, respectively. The arbitration provision here does not include language such as "arising out of" or "relating to" the Agreement; rather, similar to the clause in Duluth Clinic, the clause in this case confines itself solely to those disputes over the interpretation or application of a term in the Agreement itself. Accordingly, the Court finds that the provision in this case is narrow.

10

The Court next considers "whether the dispute involves an agreement collateral to the agreement containing the arbitration clause." Fleet Tire, 118 F.3d at 621; see also Duluth Clinic, 413 F.3d at 789. "'A "collateral" agreement is a separate, side agreement, connected with the principal contract which contains the arbitration clause. The burden is on the party resisting arbitration to demonstrate that the disputed issue is collateral.'" Duluth Clinic, 413 F.3d at 790 (quoting Prudential Lines, 704 F.2d at 64). To be construed as collateral, "it may be parallel or coordinate to the [Agreement], but it must be dissimilar and by definition be a contract set apart and distinct from the Agreement." Id. (quoting Cornell Univ. v. UAW Local 2300, 942 F.2d 138, 140 (2d Cir. 1991)). "Arbitration of collateral matters may not be 'compelled merely based upon the existence of an arbitration clause in the main agreement.'" Id. (quoting Prudential Lines, 704 F.2d at 64).

Union's Motion to Compel Arbitration is premised on the Underwriting Guidelines being incorporated by reference and not on an alleged violation of a provision of the Agreement itself. If the Underwriting Guidelines were incorporated into the Agreement, then they would not constitute a collateral agreement.

To be incorporated by reference, it is well settled under Iowa law that "one document becomes part of another separate document simply by reference" as long as that reference is "clear and specific." Hofmeyer v. Iowa Dist. Court for Fayette Cnty., 640 N.W.2d 225, 228 (Iowa 2001); see also Longfellow v. Sayler, 737 N.W.2d 148, 154 (Iowa 2007). "Whether a contract incorporates extrinsic material presents a question of law." Longfellow, 737 N.W.2d at 154. Hull argues that these requirements are not met. Hull does not dispute that certain documents were incorporated into this Agreement. Its argument, rather, is that there is not sufficient specificity to show that the documents Union is relying on in its breach of contract claim are the documents incorporated.

The language on which Union relies clearly provides that the underwriting rules incorporated into the Agreement are contained within an "Agent's Manual." Yet neither party has produced

11

such a manual. To this motion, Union attached the Underwriting Guidelines as a separate document, not as part of an Agent's Manual referred to in the Agreement. Furthermore, the first paragraph of the Underwriting Guidelines provides that the Underwriting Guidelines are only intended as a "general framework" for coverage accepted by Hull "for Continental Western Insurance Company and Union Insurance Company." Underwriting Guidelines, Br. Supp. Mot. Compel Arbitration Ex. E at 04501, ECF 35-5. This is anomalous because the Agreement defines "Company" as five companies, thus contemplating that all of the additional documents referred to would also pertain to all five of the companies, not just two of the five. In addition, the Underwriting Guidelines provided by Union are undated; the Court, therefore, cannot determine whether these guidelines were even in effect when Hull and Union entered into the Agreement.

Although the burden is generally on the party who is resisting arbitration due to the federal policy favoring arbitration, see UMB Fin. Servs., 618 F.3d at 911, in this case, the Court considers the burden to have never shifted to Hull because Union has not made the threshold showing of the terms of the full agreement. It is Union's burden, as the party bringing the motion, to provide the Court with the terms of the contract. See Advance Elevator Co. v. Four State Supply Co., 572 N.W.2d 186, 188 (Iowa 1997) ("[A] party seeking to enforce any agreement has the burden of proving the terms of the contract."). Union has provided a fundamentally insufficient record for the Court to find that the Underwriting Guidelines were clearly and specifically referred to in the Agreement. Thus, on this record the Court must conclude the Underwriting Guidelines at issue were not incorporated by reference into the Agreement.

Although the Court cannot find the Underwriting Guidelines were incorporated by reference, they could be sufficient to compel Hull to arbitrate this dispute if they are not collateral to the Agreement. However, the Court finds that the Underwriting Guidelines constitute an agreement "dissimilar and by definition . . . a contract set apart and distinct from the Agreement." Duluth Clinic, 413 F.3d at 790 (quoting Cornell Univ., 942 F.2d at 140). As discussed above,

Union submitted the Underwriting Guidelines separately, yet the Agreement referenced underwriting rules and regulations contained in an "Agent's Manual," which was not submitted. Therefore, the Court cannot conclude that the Underwriting Guidelines submitted by Union are the underwriting rules and regulations to which the Agreement referred. Furthermore, the Underwriting Guidelines are dissimilar to the Agreement in that they bind a different set of companies. Even if the Underwriting Guidelines submitted to the Court are part of a separate contract, it is of no moment because such a contract would be part of a separate contract, distinct from the Agreement itself and therefore collateral to the Agreement. See id. at 790-91 (finding that a "letter of understanding" was collateral to the collective bargaining agreement (CBA) when CBA limited arbitration to violations of its terms and the letter of understanding was not incorporated). Therefore, the Court finds that the Underwriting Guidelines constitute a separate contract and are therefore collateral.

### c. Duty to Indemnify

Hull argues that the indemnification provision is not within the arbitration provision because, as laid out in its breach of contract argument, Union's claims are based on collateral agreements, and that there is no dispute as to the "interpretation or application" of the indemnification clause, but rather the dispute is whether there is an "underlying basis for invoking and applying the indemnification provision in the first place." Def.'s Br. Resp. Mot. Compel Arbitration 7, ECF No. 42-1. Hull also argues that allowing the arbitrator to "make full-fledged findings of fact and legal determinations as to whether Defendants violated the terms of underwriting guidelines and the Facultative Reinsurance Agreement, whether such conduct constitutes a legal breach of the Agreement, whether damages should be awarded, and if so, how much" go beyond an "'interpretation' or 'application' of the terms of the Agreement" and deprive Hull of the procedural and evidentiary protections provided by the federal courts. Id. at 8-9.

The indemnification provision provides in relevant part,

13

> Agency agrees to indemnify, defend, and hold Company harmless against any liability which Company may sustain or incur directly or indirectly due to or arising out of any obligation, act, failure to act, or transaction created or done by the negligence of Agency, Agency's employee, and/or Agency's sub-Agent in violation of, in excess of, or in contravention of the power and authority granted to Agency as set forth and described in this Agreement. Agency shall be liable for all damages, including but not limited to, fines and penalties incurred due to the action of Agency.

Agreement, Pl.'s Br. Ex. D ¶ 8(D), ECF. No. 35-4. Because the indemnification provision provides that Hull will indemnify Union for acting "in violation of, in excess of, or in contravention of the power and authority granted to Agency as set forth and described in this Agreement," the Court finds this language to result in the same analysis as in Part II(B)(2)(b), *supra*. Accordingly, because Union based its claims that Hull acted in contravention of the Agreement by violating the Underwriting Guidelines, and the Court cannot find the Underwriting Guidelines are the guidelines incorporated into the Agreement, consistent with that conclusion, the Court must find that compelling arbitration based on the indemnification provision is also not appropriate. Therefore, Union's motion must be denied.

### III. CONCLUSION

For the reasons stated, Brown's Motion to Dismiss, ECF No. 36, must be **granted**, and Union's Motion to Compel Arbitration, ECF No. 34, must be **denied**.

**IT IS SO ORDERED.**

Dated this 19th day of December, 2011.

_____
JAMES E. GRITZNER, Chief Judge
U.S. DISTRICT COURT